UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cause No. 1:23-CR-5-HAB |
| ) | |
| JUSTIN M. STEVENS ) | |

**OPINION AND ORDER**

Defendant and his girlfriend went on a multi-month, drug-fueled, mail-stealing bender in the late-summer and fall of 2021. Following Defendant's guilty plea to one count of mail theft and two counts of possessing stolen mail, the United States Probation Office prepared a draft presentence investigation report. (ECF No. 35). Relevant here, the probation officer assessed a four-level enhancement because the loss exceeded $15,000.00, and a two-level enhancement because there were 10 or more victims. (*Id*. at 7). Defendant objected to both enhancements. (ECF No. 37). The Court held an evidentiary hearing on the objections (ECF No. 43), and the objections are now fully briefed (ECF Nos. 49, 51, 54).

**I.   Factual Background**

In August 2021, the United States Postal Inspection Service ("USPIS") began investigating mail thefts in and around Fort Wayne, Indiana. It first became involved after a $406.00 check was stolen from a mailbox and deposited in a bank account opened in Defendant's name.

Following other theft reports, USPIS, alongside local law enforcement, conducted overnight surveillance in a neighborhood in Huntertown, Indiana, a northern Fort Wayne suburb. On October 16, 2021, an Allen County Sheriff's deputy spotted a black Ford Edge, driven by Defendant, approach and stop at a mailbox owned by D.V. The deputy launched a traffic stop. Defendant gave inconsistent and confusing statements to the deputy as to why he was in the

neighborhood, eventually deciding that he was there to drop off something for a "buddy" named "Venderley." Venderley is D.V.'s last name. After additional questioning, Defendant admitted that he had stolen mail. He added that his girlfriend, who was asleep in the passenger seat at the time of the traffic stop, was not involved.

A later search of the Ford Edge found more than 200 pieces of mail, traceable to 128 individuals—D.V. was not one of those individuals. The addresses of the mail were generally located on the north side of Fort Wayne and its northern suburbs. Indeed, the USPIS would later discover Ring doorbell camera footage of Defendant's vehicle driving down a neighborhood street in Huntertown during the wee hours of September 27, 2021.

The amount of the loss claimed by the Government, and adopted by the probation officer, comes almost entirely from D.V. According to Postal Inspector Brian Lambka, the only witness at the evidentiary hearing, D.V. made two mail theft reports in September 2021. The thefts included checks totaling approximately $15,000.00.

At D.V.'s request, he was not called to testify at the evidentiary hearing. D.V. did not want to testify because of his age; he was 81 at the time of the hearing. And owing to his age, D.V. admitted to Inspector Lambka that his "memory was starting to degrade lightly." (ECF No. 45 at 31). Because D.V. did not testify, the Court does not know the exact amount of the allegedly stolen checks, what they were for, or who they were from. Nor did the Government introduce the theft reports allegedly made by D.V. The only evidence that any checks were stolen from D.V., then, are the uncorroborated hearsay statements of an admittedly forgetful octogenarian.

    **B.**    **Legal Discussion**

    **1.**    *U.S.S.G. § 2B1.1(b)(2)(A)(i)*

Defendant's argument related to the two-level enhancement for 10 or more victims under U.S.S.G. § 2B1.1(b)(2)(A)(i) is easy to address. The commentary defines "victim" in the case of "undelivered United States mail"[1] as "any person who was the intended recipient, or addressee, of the undelivered United States mail." U.S.S.G. § 2B1.1, cmt. 4(C)(i). It is the Government's burden to establish the number of victims. *United States v. Williams*, 892 F.3d 242, 251 (7th Cir. 2018). Inspector Lambka testified that USPIS identified mail addressed to 128 individuals when it searched Defendant's vehicle. Defendant doesn't challenge this number, and it is more than enough for the two-level enhancement.

Defendant suggests that, perhaps, Defendant's girlfriend was responsible for the thefts, and that the Government has failed to connect the mail in the vehicle to Defendant rather than his paramour. But as the Government correctly notes, Defendant has pleaded guilty to possessing the mail addressed to these 128 individuals. And he expressly denied his girlfriend's involvement with the crime when questioned by police. Given Defendant's plea and the undisputed number of victims, Defendant's objection to the two-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(i) is OVERRULED.

    **2.**    *U.S.S.G. § 2B1.1(b)(1)(C)*

Subsection (b)(1)(C) of the same Guideline assesses a four-level enhancement if the amount of loss is more than $15,000.00 but less than $40,000.00. The Government bears the burden of establishing the amount. *United States v. Durham*, 766 F.3d 672, 686 (7th Cir. 2014).

---

[1] "Undelivered United States mail" is defined as "mail that has not actually been received by the addressee or the addressee's agent (e.g., mail taken from the addressee's mailbox)." U.S.S.G. § 2B1.1, cmt. 4(C)(iii).

That said, the Court "need only make a reasonable estimate of the loss, not one rendered with scientific precision." *United States v. Gordon*, 495 F.3d 427, 431 (7th Cir. 2007).

The parties largely agree that the application of the four-level enhancement rises or falls on D.V.'s claimed $15,000.00 worth of checks. And the Government weaves a convincing narrative that, if D.V. had checks stolen, Defendant probably did it. After all, most of the mail found in Defendant's vehicle was from in and around D.V.'s neighborhood, Defendant was spotted stopping at D.V.'s mailbox just before he was arrested, and Defendant inexplicably knew D.V.'s last name.

But the Government has failed to make the preliminary showing: that checks were stolen from D.V. in the first place, or the amount of those checks. The Court understands that the Government honored D.V.'s wish not to testify, but that decision deprived the Court of the ability to observe D.V. and assess his credibility. And the Government made no effort to confirm D.V.'s hearsay statements through other means—for instance, the Government did not introduce testimony from the sender of the alleged checks, or even the theft reports allegedly made by D.V. And there's no direct evidence of thefts from D.V., as none of D.V.'s mail was found in Defendant's vehicle. The Court has no reliable evidence on which it can base a finding that checks were stolen from D.V.

The amount is an even bigger concern. Throughout the evidence and its briefs, the Government repeatedly claims that D.V. had "approximately $15,000" in checks stolen. Given that the threshold for the enhancement is exactly $15,000.00, the word "approximately" is doing a lot of heavy lifting. Say, for instance, the checks totaled $14,500.00, well-within the margin of error contemplated by "approximately." That would leave the Government with only $14,906.00 of

4

demonstrable loss, below the enhancement threshold. The Court is not willing to base a four-level enhancement on a wiggle word and declines the Government's invitation to do so.

In short, the Court finds that the Government has failed to carry its burden on the amount of loss. With no reliable evidence that checks were stolen from D.V., or the amount of those checks, the Court finds that any attempt to attribute an amount of loss above the $406.00 check deposited into Defendant's account would be pure guesswork. Defendant's objection to the four-level enhancement under U.S.S.G. § 2B1.1(b)(1)(C) is SUSTAINED.

### III.   Conclusion

For these reasons, Defendant's objection to the four-level enhancement under U.S.S.G. § 2B1.1(b)(1)(C) is SUSTAINED. Defendant's objection to the two-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(i) is OVERRULED. The probation officer is DIRECTED to prepare a revised final presentence investigation report consistent with this Opinion and Order.

SO ORDERED on August 20, 2024.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT